**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| E.E. and L.E. o/b/o K.M., <br><br> *Plaintiffs*, <br><br> v. <br><br> RIDGEFIELD PARK BOARD OF EDUCATION, <br><br> *Defendant*. | Civil Action No. 19-1221 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs bring this matter challenging two Administrative Law Judge ("ALJ") decisions concerning the sufficiency of educational services provided by Defendant Ridgefield Park Board of Education ("Ridgefield Park") to K.M., a student entitled to special education and related services. The overarching issue is whether K.M. received a free appropriate public education ("FAPE") as a student at Ridgefield Park. This matter arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:1-2. Presently before the Court are cross-motions for summary judgment filed by (1) Ridgefield Park, D.E. 13; and (2) Plaintiffs E.E. and L.E., on behalf of K.M., D.E. 14. The Court reviewed the parties' submissions[1] and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and

---

[1] Defendant's brief in support of its motion for summary judgment (D.E. 13-1) will be referred to as "Def. Br."; Plaintiffs' brief in support of their motion for summary judgment (D.E. 14-2) will

L. Civ. R. 78.1(b). For the reasons set forth below, with respect to Plaintiffs' IDEA, Section 504 and ADA claims, Defendant's motion is **GRANTED** and the federal claims are **DISMISSED**, and Plaintiffs' motion is **DENIED**. Because Plaintiffs' federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Therefore, Plaintiffs' NJLAD claims are **DISMISSED** without prejudice for lack of subject matter jurisdiction.

I.   BACKGROUND[2]

    1. **Factual Background**

In 2005, at the age of 7, K.M. was diagnosed with attention deficit hyperactivity disorder ("ADHD"). PSOMF ¶ 10(a). Following a series of private evaluations and assessments, K.M. was deemed eligible for special education services as communication impaired. *Id.* ¶ 10(a)-(f). Ridgefield Park and K.M.'s mother, M.M., agreed on an initial Individualized Education Plan ("IEP"), which was implemented on November 2, 2005 for K.M.'s second-grade school year. *Id.* ¶ 10(f). From 2006 through 2015, M.M. and Ridgefield Park participated in annual reevaluation planning conferences and implemented a new IEP for K.M. each year. *Id.* ¶¶ 10(g)-(q); 32(a). In 2008 and in 2012, M.M. waived the triennial reevaluation. *Id.* ¶ 10(j).

Ridgefield Park anticipated that K.M. would graduate from high school in June 2016. And at the annual review in March 2015, M.M. specified that she also wanted K.M. to graduate in June 2016. ALJ Decision at 4. The 2015-2016 IEP was implemented in March 2015. PSOMF ¶ 32(a).

---

be referred to as "Plfs. Br."; Defendant's brief in opposition to Plaintiffs' motion (D.E. 20) will be referred to "Def. Opp."; Plaintiffs' brief in opposition to Defendant's motion for summary judgment (D.E. 19) will be referred to as "Plfs. Opp."; Defendant's reply brief (D.E. 23) will be referred to "Def. Reply"; and Plaintiff's reply brief (D.E. 24) will be referred to as "Plfs. Reply".

[2] The factual background is taken from Plaintiffs' statement of material facts ("PSOMF"), D.E. 14-1; Defendant's statement of material facts ("DSOMF"), D.E. 13-2; and the Final Decision from Administrative Law Judge Barry E. Moscowitz (the "ALJ Decision"), D.E. 1-1.

In July 2015, Ridgefield Park conducted a psychological and learning evaluation of K.M. "to update his records for transition planning." *Id.* ¶ 33. The evaluations indicated that K.M. had deficits in reading and reading comprehension, and he scored in the "low average range in many areas" of the educational evaluation. *Id.* ¶ 37; DSOMF ¶¶ 19, 22.

M.M. passed away in March 2016. DSOMF ¶ 30. After M.M.'s death, K.M. continued to attend school in Ridgefield Park but began living with his aunt, E.E., in Point Pleasant, New Jersey. PSOMF ¶ 32(a); DSOMF ¶ 31. At E.E.'s request, Ridgefield Park conducted an additional psychological evaluation of K.M. in May 2016. The testing indicated that K.M.'s IQ was in the "borderline range"; E.E. raised concerns that this testing indicated that K.M.'s abilities dropped since the last comprehensive evaluations in 2005. *Id.* ¶¶ 37-38.

On June 20, 2016, Ridgefield Park developed an IEP that did not graduate K.M. because E.E. wanted K.M. to attend a transitional program in Point Pleasant. DSOMF ¶¶ 48-50. Although K.M. met his high school graduation requirements at Ridgefield Park, Ridgefield Park provided K.M. with a "certificate of promotion," instead of a diploma, so that K.M. could transition to the Point Pleasant Beach School District as a fifth-year senior. *Id.* ¶ 50. K.M. attended an extended twelfth-year program at Point Pleasant Beach for the 2016-2017 school year. ALJ Decision at 15.

**2. Procedural History**

On April 24, 2017, E.E. and L.E. filed a Due Process complaint, on behalf of K.M., against Ridgefield Park. PSOMF ¶ 1. Plaintiffs[3] alleged, among other things, that the 2005-2006 through 2015-2016 IEPs did not provide K.M. a FAPE, as defined by the IDEA. Plaintiffs sought

---

[3] After his mother's death, K.M. provided E.E. with permission to make his educational decisions. DSOMF ¶ 34. Accordingly, E.E. can properly assert this matter on behalf of K.M. The Complaint and underlying Due Process claim are largely based on decisions that were made by M.M. before she passed away. The Court does not distinguish who made specific decisions because it does not impact the analysis. As a result, M.M., E.E., and L.E. are collectively referred to as Plaintiffs.

3

compensatory education from November 2005 through June 2016. *Id.* ¶ 7. On August 25, 2017, Ridgefield Park filed a motion for summary decision asserting that the statute of limitations barred K.M.'s claims. *Id.* ¶ 3. In a November 28, 2017 opinion, the ALJ determined that the knew or should have known (the "KOSHK") date – the critical date for the accrual of Plaintiffs' claims -- was July 1, 2015. According to ALJ Moscowitz, July 1, 2015 was the date of the evaluations that allegedly indicated a drop in K.M.'s cognitive or intellectual abilities. Interlocutory Order at 1, D.E. 1-2. The ALJ reserved decision on the remedial period that Plaintiffs could recover for, if he concluded that Ridgefield Park did not provide K.M. with a FAPE. *Id.* at 1-2. ALJ Moscowitz, however, denied Ridgefield Park's motion for summary decision because Plaintiffs filed their Due Process complaint within two years of the KOSHK date. ALJ Decision at 1-2.

Plaintiffs subsequently filed a motion for summary decision in the administrative proceeding on December 22, 2017, seeking relief from November 3, 2005 through June 2016. Plaintiffs contended that K.M. did not receive a FAPE the entire time that he was a student at Ridgefield Park. *Id.* ¶ 7. On April 6, 2018, ALJ Moscowitz decided that the period of recovery was limited to the 2015-2016 school year. *See* Interlocutory Order at 3. ALJ Moscowitz explained that parents have an independent duty to take appropriate action under the IDEA. *Id.* at 2. As a result, the ALJ determined that Plaintiffs "did not take appropriate and timely action under the IDEA to be made whole" for the entire requested period. *Id.* at 3. ALJ Moscowitz limited the recovery period to July 1, 2015, or the "reasonably determined start of the alleged violation," to June 2016, when K.M. left Ridgefield Park. In short, Plaintiffs could only challenge and recover for the 2015-2016 school year. *Id.* at 2-3.

The ALJ then conducted a non-consecutive three-day hearing in 2018 to determine whether Ridgefield Park provided K.M. a FAPE during the 2015-2016 school year. ALJ Moscowitz issued

4

his final decision on January 15, 2019, concluding that Ridgefield Park did provide K.M. with a FAPE. *See* ALJ Decision at 1, D.E. 1-1. ALJ Moscowitz heard testimony from four witness for Ridgefield Park. Judge Moscowitz determined that all four witnesses credibly and reliably testified that the 2015-2016 IEP was reasonably calculated to provide K.M. with significant learning and meaningful educational benefit in the least-restrictive environment. *Id.* at 32. Plaintiffs offered testimony from three witnesses. Although ALJ Moscowitz concluded that Plaintiffs' witnesses provided credible testimony, he determined that their testimony was not reliable. Specifically, none of Plaintiffs' witness evaluated K.M. at or near the time that the 2015-2016 IEP was proposed; they did not meet with M.M. or K.M. while he was a student at Ridgefield Park, or speak with any of K.M.'s educators at Ridgefield Park; portions of their testimony was contradictory; and Plaintiffs' witnesses did not evaluate K.M. for the purpose of determining whether the 2015-2016 IEP was appropriate. *Id.* at 33.

On January 28, 2019, Plaintiffs filed their Complaint in this matter seeking review of ALJ Moscowitz's Interlocutory Order and the Final Decision. D.E. 1. The parties filed the instant cross-motions for summary judgment on September 27, 2019 based on the administrative record. D.E. 13, 14.

## II.     STATUTORY FRAMEWORK

The IDEA requires states that receive federal education funding to provide every disabled child with a FAPE. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017) (citing 20 U.S.C. § 1400, *et seq.*). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Ridley Sch. Dist. v. M.R.,* 680 F.3d 260, 268–69 (3d Cir. 2012) (internal quotation marks omitted). While a state is not required

to maximize the potential of every disabled child, it must provide more than *de minimus* progress each year. *Endrew F*, 137 S. Ct. at 1001.  Accordingly, school districts must offer an IEP that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." *K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018) (quoting *Ridley Sch. Dist.*, 680 F.3d at 269).

IEPs are critical. "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *D.S. v. Bayonne Bd. of Educ.,* 602 F.3d 553, 557 (3d Cir. 2010).  It must not be a "form document." *Endrew F.*, 137 S. Ct. at 999.  Thus, an IEP "turns on the unique circumstances of the child for whom it is created." *Id.* at 1001.  For a child integrated into a regular classroom, an IEP is usually "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 999 (quoting *Bd. of Ed. of Hendrick Hudson Ctr. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 203-04 (1982)). And while parents often play a role in the development of an IEP, they do not have a right to compel a school district to provide a specific program or employ specific methodology in educating a student.  *See Ridley Sch. Dist.,* 680 F.3d at 269, 278.

The IDEA provides mechanisms for an aggrieved party to submit a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A). Initially, a party may bring a complaint to challenge the adequacy of an IEP through "an administrative 'impartial due process hearing.'" *Ridley Sch. Dist.*, 680 F.3d at 269 (quoting 20 U.S.C. § 1415(f)). "In New Jersey, this process entails filing a complaint and request for a due process hearing with the New Jersey Department of Education ("NJDOE")." *Estate of S.B. ex rel.*

*Bacon v. Trenton Bd. of Educ.*, No. 17-7158, 2018 WL 3158820, at *2 (D.N.J. June 28, 2018) (quoting N.J.A.C. 6A:14-2.7(c)).  A party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy." 20 U.S.C § 1415(i)(2)(A). The party challenging the administrative decision in district court "bears the burden of persuasion . . . as to each claim challenged." *Ridley Sch. Dist.,* 680 F.3d at 270.

Relatedly, Section 504 of the Rehabilitation Act "protects the rights of disabled children by prohibiting discrimination against students on the basis of disability."  *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).  Section 504 provides as follows:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794.  Like the IDEA, Section 504 "has child find, evaluation, and FAPE requirements." *P.P.*, 585 F.3d at 735.  Section 504, however, "defines disability more broadly than the IDEA, and thus, some students covered by Section 504 are not covered under the IDEA." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 269 n.4 (3d Cir. 2014).

**III.   STANDARD OF REVIEW**

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by

her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The standard by which the court decides a summary judgment motion does not change when the parties filed cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002).

When reviewing an IDEA decision by a state administrative agency, district courts engage in a "modified de novo review." *D.S.*, 602 F.3d at 564. Under this standard, courts give "'due weight' and deference to the findings in the administrative proceedings." *Id.* Accordingly, an ALJ's factual findings are reviewed for clear error. *E.P. v. N. Arlington Bd. of Educ.*, No. 17-8195, 2019 WL 1495692, at *4 (D.N.J. Apr. 1, 2019). Factual findings are considered *prima facie* correct and if a court does not adhere to these findings, it must explain why. *D.S.*, 602 F.3d at 564. Moreover, a court must accept the ALJ's credibility determinations unless nontestimonial, extrinsic evidence in the record justifies a contrary conclusion. *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199-200 (3d Cir. 2004). An ALJ's conclusions of law, however, are subject to plenary review. *E.I.H. v. Fair Lawn Bd. of Educ.*, 747 F. App'x 68, 71 (3d Cir. 2018).

## IV. DISCUSSION

### 1. IDEA Claims

#### a. Statute of Limitations

Plaintiffs contend that the ALJ incorrectly concluded that the statute of limitations barred review of K.M.'s IEPs before the 2015-2016 school year. Plfs. Br. at 4-7. "[A] due process complaint must be presented within 2 years' of a parent's reasonable discovery date" of the action that forms the basis of the complaint. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015). The discovery date is described as the knew or should have known ("KOSHK")

date. *Id.* at 604 n.2. If liability is proven for a timely claim, "a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *Id.* at 626 (quoting *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012)). In addition, the statute of limitations for an IDEA claim "is not subject to equitable tolling principles, including the continuing violation doctrine." *Estate of S.B.*, 2018 WL 3158820, at *6 (citing *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 248 (3d Cir. 2012)). Rather, the statute of limitations will only be tolled if a parent satisfies a statutory exception. Thus, "parents may not, without satisfying one of the two statutory exceptions, knowingly sit on their rights or attempt to sweep both timely and expired claims into a single 'continuing violation' claim brought years later." *G.L.*, 802 F.3d at 625.

"Application of the IDEA statute of limitations is a highly factual determination that a hearing officer must make on a case-by-case basis." *McLean v. Eastampton School Dist.*, No. 19-11009, 2020 WL 728816, at *4 (D.N.J. Feb. 13, 2020) (quoting *Brady P. by Beth v. Cent. York Sch. Dist.*, No. 16-2395, 2018 WL 1367325, at *7 (M.D. Pa. Mar. 16, 2018)). The statute of limitations begins to run on the KOSHK date, or "once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation - whichever comes first." *G.L.*, 802 F.3d at 614. To determine the KOSHK date, courts generally focus on "clear action or inaction by a school district sufficient to alert a reasonable parent that a child would not be appropriately accommodated." *McLean*, 2020 WL 728816, at *4.

In this instance, the ALJ determined that the KOSHK date was July 1, 2015, the date that Plaintiffs "learned of the precipitous drop in [K.M.'s] general intellectual or cognitive ability." Interlocutory Order at 1. Accordingly, ALJ Moscowitz limited Plaintiffs' claims to the IEPs that were implemented after the KOSHK date. *Id*. K.M. attended Ridgefield Park for the 2015-2016

9

school year then went to school in Point Pleasant Beach for the 2016-2017 school year, so ALJ Moscowitz limited his review to whether Defendant provided a FAPE to K.M. during the 2015-2016 school year. *Id.* at 1-2.

Plaintiffs do not appear to contest that July 1, 2015 is an appropriate KOSHK date. Plaintiffs, however, seek compensatory education beginning in 2005, when K.M. first started attending Ridgefield Park schools. But the ALJ determined that Plaintiffs failed to take appropriate and timely action in asserting their rights under the IDEA for this entire time. As a result, the ALJ limited K.M.'s potential relief to alleged violations within the two-year statute of limitations. While not clearly articulated, Plaintiffs appear to disagree with this conclusion – that Plaintiffs' claims should be limited because of their inaction.

The Court views the KOSHK date here as a dividing point between distinct arguments as to K.M.'s education.[4] Prior to this date, Plaintiffs' argument is premised on the allegation that Defendant did not provide K.M. with a FAPE because Defendant failed to identify the true extent of K.M.'s disabilities. After the KOSHK date, when the parties learned that K.M. may have suffered a drop in his cognitive abilities, Plaintiffs allege that the IEP did not sufficiently address K.M.'s needs given the known drop in abilities. Using the July 1, 2015 KOSHK date, the Court agrees that only Plaintiffs' claims with respect to the 2015-2016 IEP were filed within the statute of limitations.

Because Plaintiffs' pre-2015 claims fall outside of the two-year statute of limitations, Plaintiffs can only bring these claims if one of the two statutory exceptions applies.[5] *See B.B. ex*

---

[4] As the statute of limitations is a legal conclusion, ALJ Moscowitz's decision is subject to plenary review. *E.I.H.*, 747 F. App'x at 71.

[5] As noted, Plaintiffs do not argue that there should be a different KOSHK date for the pre-2015 IDEA claims. Accordingly, the Court will use this date as the reasonable discovery date.

10

*rel. Catherine B. & Jimmy B. v. Del. Coll. Preparatory Acad.*, 803 F. App'x 593, 596 (3d Cir. Feb. 11, 2020) (explaining that if the statutory exceptions are inapplicable, "a plaintiff can seek relief only for those violations that took place within two years of the date he filed his complaint"). The IDEA provides that the two-year statute of limitations does not apply

> if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3). For an exception to apply, a plaintiff must demonstrate that the misrepresentation or withholding of information "caused her failure to request a hearing or file a complaint on time." *D.K.*, 696 F.3d at 246-47. Moreover, plaintiffs can satisfy subsection (ii) "only by showing that the school failed to provide them with a written notice, explanation, or form specifically required by the IDEA statutes and regulation."[6] *Id.* at 246.

Plaintiffs contend that M.M. only executed a knowing waiver of the right for reevaluation in 2008, and that any waiver of a reevaluation after that point was not knowingly made. Plfs. Reply at 9. The fact that M.M. was advised of her rights in 2008 and gave a knowing waiver undercuts Plaintiffs' argument that her later waiver of a reevaluation was not knowing. More importantly, Plaintiffs provide no evidence indicating that Defendant's failure to provide information required by the IDEA caused any delay in requesting a due process hearing – much less prevented Plaintiffs from requesting a hearing. Because Plaintiffs fail to establish that either statutory exception to the IDEA statute of limitations applies, Plaintiffs cannot assert their claims

---

[6] For the intentional misrepresentation exception to apply, parents must show that the "school intentionally misled them or knowingly deceived them regarding their child's progress." *D.K.*, 696 F.3d at 246. Plaintiffs do not focus on this exception and the Court does not see any such misrepresentation in the record.

as they pertain to Defendant's failure to provide a FAPE to K.M. prior to the 2015-2016 school year.

Plaintiffs also argue that Defendant has an independent duty to recognize that K.M. was not receiving a FAPE, and that it failed to recognize that K.M.'s IEPs were inadequate. Plaintiffs contend that Defendant has a different KOSHK date than Plaintiffs, and that in this case it was likely earlier than Plaintiffs' KOSHK date. Plfs. Br. at 4-12. Plaintiffs are correct that a school has an independent duty to identify a child's special educational needs. Accordingly, when "a school district has failed in that responsibility and parents *have* taken appropriate and timely action under the IDEA, then that child is entitled to be made whole with nothing less than a 'complete' remedy." *G.L.*, 802 F.3d at 625. However, as noted, Plaintiffs failed to take timely action for their claims prior to the 2015-2016 school year. Accordingly, even assuming that Defendant did not appropriately identify K.M.'s educational needs, Plaintiffs are barred by the statute of limitations from receiving compensatory education for this time period. The Court finds that ALJ Moscowitz correctly limited his review to the 2015-2016 IEP.

### b. 2015-2016 IEP

Next, Plaintiffs contend that the ALJ erred in concluding that the 2015-2016 IEP provided K.M. a FAPE. Plaintiffs maintain that the ALJ erred because he placed the burden of proof on Plaintiffs to establish that the IEP was insufficient. Plfs. Br. at 16. An IEP "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." *K.D.*, 904 F.3d at 254 (quoting *Ridley Sch. Dist.*, 680 F.3d at 269). In an IDEA due process hearing, the school district bears the burden of proof as to whether it offered a student a FAPE. *See* N.J.S.A. 18A:46-1.1.

Plaintiffs, however, cherry-pick a single quote from the Final Decision to support this argument. When reading ALJ Moscowitz's final decision as a whole, it is clear that he did not apply an incorrect burden here. In this instance, the ALJ relied on testimony from four witnesses who testified on behalf of Ridgefield Park -- Thomas Kraljic, Melissa Sheldon, Stacy Puchalik, and Michelle Gonzalez. All four witnesses knew K.M. and spoke with his mother, M.M., while K.M. was a student at Ridgefield Park. In addition, all four witnesses were generally complementary of K.M. and his progress at Ridgefield Park, and believed that the 2015-2016 IEP was designed to provide him with a meaningful educational benefit given K.M.'s needs and potential. ALJ Report at 4-14. The ALJ determined that these four witnesses provided credible, reliable testimony demonstrating that through the 2015-2106 IEP, Ridgefield Park provided a FAPE to K.M. *Id.* at 32-33.

Next, Plaintiffs maintain that other than Sheldon, Ridgefield Park's witnesses provided net opinions because they did not observe K.M. in a classroom setting before the 2015-2016 IEP was implemented. Plfs. Br. at 17-19. "Under New Jersey law, an 'expert's bare conclusions, unsupported by factual evidence' are an inadmissible 'net opinion.'" *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008) (quoting *Buckelew v. Grossbard*, 87 N.J. 512, 524 (1981)). Under the net opinion rule, an expert's opinion "must be based on a proper factual foundation." *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309, 323 (App. Div. 1996). Namely, "[t]he net opinion rule requires the expert to give the 'why and wherefore' of the opinion, rather than a mere conclusion." *Curtis v. Besam Grp.*, No. 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007). Ridgefield Park's experts did not provide net opinions at the due process hearing. Kraljic was "directly involved" in drafting the IEP, ALJ at 4, thus he clearly has a proper factual foundation to testify about the IEP. And Puchalik

13

and Gonzalez both performed evaluations on K.M. during the 2015-2016 school year. *Id.* at 9, 14. As a result, both these witnesses had a sufficient factual foundation to testify about whether K.M. received a FAPE during the 2015-2016 school year. Plaintiffs' net opinion argument, therefore, is rejected.

Plaintiffs continue that because ALJ Moscowitz rejected Plaintiffs' witnesses as unreliable, then Ridgefield Park's witnesses should have also been deemed unreliable "when measured against the same standard." Plfs. Opp. Br. at 6. The ALJ found Plaintiffs' expert testimony unreliable largely because they had no basis to opine about the education K.M. received at Ridgefield Park. Plaintiffs' experts only spoke with K.M. after he left Ridgefield Park, never had an opportunity to speak with M.M. before she passed away, and did not contact any Ridgefield Park employee about K.M.'s experiences while he was a student at Ridgefield Park. Unlike Ridgefield Park's witnesses, Plaintiffs' witnesses lacked first-hand knowledge about the school year in question. Accordingly, the Court does not conclude that the ALJ committed clear error in finding Defendant's witnesses more reliable than Plaintiffs' witnesses.

Plaintiffs' remaining arguments also fail to provide a basis to disturb the ALJ's conclusion that Ridgefield Park provided K.M. with a FAPE or that the IEP was deficient. Plaintiffs' claims are largely based on ALJ Moscowitz's credibility determinations. *See, e.g.*, PSOMF ¶¶ 32, 36. Plaintiffs, however, do not provide the Court with any extrinsic evidence demonstrating that ALJ Moscowitz committed error in reaching his conclusions. ALJ Moscowitz credited Ridgefield Park's witnesses, who were familiar with K.M., his mother, and his educational progress during the 2015-2016 school. The ALJ gave little weight to Plaintiffs' experts, who did not meet with K.M. while he was a student at Ridgefield Park or speak with any of his educators from Ridgefield Park. Moreover, based on largely positive testimony from Ridgefield Park's witnesses explaining

14

that K.M. was meeting his classroom goals, the ALJ determined that Ridgefield Park provided an appropriate education program for the 2015-2016 school year. Therefore, with respect to Plaintiffs' IDEA claims, summary judgment is granted as to Defendant and denied as to Plaintiffs. Plaintiffs' IDEA claims are dismissed.

### 2. ADA and Section 504 Claims

Defendant argues that Plaintiffs' Section 504 of the Rehabilitation Act and ADA claims are also subject to the two-year IDEA statute of limitations. Def. Opp. at 18. In *P.P.*, the Third Circuit determined that the two-year IDEA statute of limitations applies to Section 504 of the Rehabilitation Act. *P.P.*, 585 F.3d at 737. The Third Circuit explained that when a federal statute does not have a specific limitations period, a court may in certain circumstances "borrow" the statute of limitations from "an analogous federal law." *Id.* at 735. The Circuit recognized that the IDEA and Section 504 "do similar statutory work," and that applying a different statute of limitations to a parent's Section 504 claims "could frustrate federal policy in certain situations" by creating a means to repackage time-barred IDEA claims. *Id.* at 736. In *P.P.*, the plaintiffs' Section 504 claims were entirely premised on their IDEA claims. Accordingly, the Third Circuit used the IDEA statute of limitations for the Section 504 claims. The Circuit explained that

> [i]t does not make sense that the virtually identical claims made under these two statutes would be treated differently from a statute-of-limitations perspective . . . . If a plaintiff was barred from asserting an IDEA claim because the statute of limitations had run and neither of the exceptions applied, why should the identical claim, made under the Rehabilitation Act, be subject to different tolling principles?

*Id.*

Like Section 504 of the Rehabilitation Act, the ADA does not have its own statute of limitations. As a result, courts in this district have extended *P.P.* and applied the IDEA statute of

15

limitations to ADA claims that are based on a plaintiff's IDEA claims. *See In re S.B. ex rel. Bacon v. Trenton Bd. of Educ.*, 2018 WL 3158820, at *6; *Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308, 2016 WL 4571388, at *9-10 (D.N.J. Sept. 1, 2016); *see also Batchelor*, 759 F.3d at 274 (applying IDEA exhaustion requirement to § 504 and ADA claims that unmistakably relate to the FAPE component of the IDEA). Here, Plaintiffs' ADA claims are identical to their IDEA claims. Thus, the ADA claims clearly concern whether Ridgefield Park denied K.M. a FAPE. The two-year IDEA statute of limitations, therefore, applies to Plaintiffs' Section 504 and ADA claims. For the reasons discussed above, Plaintiffs' Section 504 and ADA claims are also limited to the 2015-2016 school year.

Defendant appears to argue that Plaintiffs' Section 504 and ADA claims are subsumed into their IDEA claims, therefore, the Court need not conduct an independent analysis under each statute. Def. Opp. at 17 n.3, 18. Provided that a plaintiff satisfies the exhaustion requirement of the IDEA, a plaintiff may assert claims for relief for the denial of a FAPE under multiple federal statutes. *See S.D. ex rel. A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 125-26 (2018). And a plaintiff's Section 504 or ADA claims are not necessarily subsumed into an IDEA claim. Thus, the Court analyzes Plaintiffs' Section 504 and ADA claims separately from the IDEA claims.

For both the Section 504 and ADA claims, Plaintiffs must establish that K.M. "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *K.N. v. Gloucester City Bd. of Educ.*, 379 F. Supp. 3d 334, 345 (D.N.J. 2019) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)). A plaintiff can establish the third element by demonstrating that he "was not given meaningful access to a program." *Id.*

Meaningful access requires "evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *Id.* (quoting *Alexander v. Choate*, 469 U.S. 287, 304 (1985)).

Plaintiffs argue that "[t]he District's discriminatory denial of reasonable accommodations deprived K.M. of meaningful access to his education in the same manner as peers without disabilities." Plfs. Br. at 15-16. Plaintiffs, however, provide no facts to support this argument. And there is nothing in the record demonstrating that Ridgefield Park denied K.M. an appropriate education because of his disability. Summary judgment, therefore, is granted to Defendant on these claims and denied as to Plaintiffs. Plaintiffs' Section 504 and ADA are also dismissed.

### 3. NJLAD Claim

Plaintiffs remaining claims are brought pursuant to the NJLAD. To adjudicate a case, a federal court must have either federal question or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332; *see also Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011). Here, as noted above, the Court's federal question jurisdiction is based on Plaintiffs' claims for relief under the IDEA, Section 504 and ADA. *See Rockefeller*, 424 F. App'x at 83 (federal question jurisdiction arises when a federal court has subject matter jurisdiction arising under "the Constitution, laws, or treaties of the United States."). This Court has supplemental jurisdiction over Plaintiffs' NJLAD claims by virtue of 28 U.S.C. § 1367(a).

28 U.S.C. § 1367(a) confers district courts with supplemental jurisdiction over "claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c), however, gives district courts discretion to decline to hear claims they would otherwise have supplemental jurisdiction to entertain pursuant to § 1367(a). Namely, § 1367(c)(3) provides that a "district court[] may decline

to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  While the determination of whether to decline supplemental jurisdiction under § 1367(c)(3) is discretionary, "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction."  *Shaffer v. Township of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").

As discussed, summary judgment is granted to Defendant for Plaintiffs' IDEA, Section 504 and ADA claims.  These claims formed the basis of the Court's subject-matter jurisdiction.  Pursuant to § 1367(c)(3), therefore, this Court declines to exercise supplemental jurisdiction over the NJLAD claim and accordingly, will not address the parties' arguments as to the NJLAD claim.  This claim, therefore, is dismissed for lack of subject matter jurisdiction.

### V.    CONCLUSION

In sum, the Court **GRANTS** Defendant's motion for summary judgment as to the IDEA, Section 504 and ADA claims and these claims are dismissed.  In addition, Plaintiffs' motion as to these claims is **DENIED**.  Finally, Plaintiffs' NJLAD claims are dismissed without prejudice for lack of supplemental jurisdiction.  An appropriate Order accompanies this Opinion.

Dated: June 11, 2020

                                                                        _____
                                                                        John Michael Vazquez, U.S.D.J.